```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

EQT GATHERING EQUITY, LLC,
a Delaware limited liability company, and
EQT PRODUCTION COMPANY
a Pennsylvania corporation,

       Plaintiffs

v.                                      Civil Action No. 2:09-0069

FOUNTAIN PLACE, LLC,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On March 3, 2011, the court entered a memorandum opinion and order denying a motion for partial summary judgment as to Count Three filed by plaintiffs' EQT Gathering Equity, LLC, ("EGE") and EQT Production Company ("EPC") and also denying a motion for summary judgment filed by defendant Fountain Place, LLC ("Fountain Place").

The March 3, 2011, memorandum opinion and order noted uncertainties in the record at several points. The court does not revisit the factual or legal discussion found therein except as necessary to discuss the parties' attempts to clarify the record with supplemental briefing filed April 4 and 7, 2011.

I.

A. Relationship Between Successor Entities

In the process of discussing plaintiffs' interest under the CCC Lease, which is a 1944 agreement between Island Creek Coal Company and Columbian Carbon Company ("CCC") providing for the severance of gas and oil from a parcel that includes the area constituting the property that is the subject of this action ("subject property"), the court noted as follows:

> The rights of CCC . . . under the CCC Lease were ultimately transferred, on an unstated date by an unidentified successor entity, to [EPC] . . . . Fountain Place . . . alleges, and plaintiffs concede, that one of EPC's predecessors in interest, in existence at least between approximately 1997 through perhaps as early as 2001, was an entity known as Eastern States Oil & Gas, Inc. ("Eastern").

(Memo. Op. and Ord. at 3).

The court observed that the parties "offer[ed] very few details respecting Eastern," especially respecting whether it was the owner of the pipeline and easement at the time some or all of the fill material was placed over the pipeline at the center of this controversy. (Id.) The court also noted the lack of any discussion concerning whether Eastern had assigned any claims or rights to plaintiffs respecting this action.

2

On April 4, 2011, Fountain Place submitted with its supplemental brief a document entitled "Certificate of Company Name Change." (Ex. A, Def.'s Supp. Memo.). The document, filed on or about May 6, 2009, by EPC with the Office of the Clerk of the Logan County Commission, clarifies that EPC, "by various mergers and name changes," is "a successor in title to" Eastern. (Id. at 1).

Inasmuch as Fountain Place now concedes in its supplemental brief that Eastern and EPC "are the same corporation," the court concludes for the purposes of this action that EPC may pursue the rights and claims alleged in herein. The record remains uncertain respecting the time period that title to the subject property was held in the name of Eastern. The court invites the parties to consider a stipulation on that point.

B.   June 10, 1999, Agreement of Purchase and Sale

The March 3, 2011, memorandum opinion and order quoted language found in a deed conveying the subject property from Monterra Marketplace to Fountain Place. That sale of the subject property, achieved pursuant to 11 U.S.C. § 363(f), was approved

3

by the United States Bankruptcy Court for the Southern District of West Virginia inasmuch as Monterra Marketplace was a debtor at the time. The deed referenced a June 10, 1999, Agreement of Purchase and Sale ("Agreement") that was not found in the record. Fountain Place has now submitted the Agreement.

The court has reviewed the Agreement. One provision recites that Fountain Place purchases the subject property "'AS-IS','WHERE-IS' and 'WITH-ALL-FAULTS . . . .'" (Agmt. at 2). Another shifts to Fountain Place the obligation to "DEFEND, INDEMNIFY AND HOLD SELLER . . . HARMLESS FROM ANY SUCH LIABILITY FOR . . . [ANY . . . CHARGES OR EXPENSES WHATSOEVER PERTAINING TO THE PROPERTY OR TO THE OWNERSHIP, TITLE, POSSESSION, USE, OR OCCUPANCY OF THE PROPERTY] INCURRED BY SELLER SUBSEQUENT TO THE DATE OF CLOSING." (Id. at 10). The Agreement is otherwise silent respecting the potential liability of Monterra Marketplace or Fountain Place in this action.

C. Notice to Eastern of the Orders of the Bankruptcy Court and the Precursor Proceedings Leading Thereto

Fountain Place suggested in its summary judgment briefing that it received the subject property "free and clear of all claims" as a result of the bankruptcy court's approval of the

sale pursuant to section 363(f).  (Def.'s Resp. to Summ. J. at 2 (emphasis in original)).  As noted by the March 3, 2011, memorandum opinion and order, however, "the parties dispute whether Eastern received notice of the orders and precursor proceedings relating to the subject property."  (Memo. Op. and Ord. at 6).

Fountain Place offers the following explanation in its supplemental brief:

> Defendant's counsel contacted Andy Nason who was the attorney for Monterra Market Place, Inc., and Monterra Development Corporation and he advised that  . . . [docket sheet entries] . . . 11 and 16 [in the bankruptcy case] reflect the Bankruptcy Clerk mailed . . . notice to Eastern . . . at the address listed as Route 1, Box 118, Middle Two Mile road, Milton, WV 25541. He stated there is no Court record the notice was returned as undeliverable. Based on the . . . [docket sheet] sent by Mr. Nason, it does not appear that an actual claim was filed by Eastern . . . .  Mr. Nason also stated he sent a letter to Eastern . . . ., which is indicated by Docket [Entry] 34.  Mr. Nason stated he also sent one out on September 2, 1999, represented by Docket Entry No. 13, which went to Eastern . . . .

(Def.'s Supp. Br. at 3).

There are a number of difficulties with these representations.  First, the portion of the docket sheet submitted by Fountain Place to substantiate its contentions originated not from the Monterra Marketplace proceeding but

5

rather the Chapter 11 case respecting Monterra Development Corporation.

Second, it is true that document 16 is a certificate of mailing that includes a creditor named "Eastern States" at an address in Milton, West Virginia.  Document 11 also appears on the docket sheet but is inaccessible for viewing.  In any event, both documents were filed respectively on September 20 and 21, 1999, over a year prior to the bankruptcy court's November 1, 2000, Amended Omnibus Order permitting the sale of the subject property to Fountain Place.  Plaintiffs assert, inter alia, that the Milton address was a location where Eastern had ceased doing business as of November 3, 1998.  This contention appears accurate.  While Mr. Nason states "there is no Court record . . . notice was returned as undeliverable," that is not the case.  The court has found at docket entry 326, page 6, a "Court's Certificate of Mailing" setting forth the following:

> EASTERN STATES
> returned mail
> 3/6/2000

Third, the "letters" referenced by Mr. Nason at docket entries 13 and 34 are not letters at all.  They are, respectively, an order approving the employment of debtor's counsel and a certificate of service with attachments.  Neither

6

document reflects that it was sent to Eastern or, if so, at what address. The certificate of service with attachments found at docket entry 34 references an "attached mailing matrix," but the attachments include no such matrix.

In sum, Fountain Place's efforts to clarify the proceedings surrounding the section 363(f) sale have only raised further questions respecting Eastern's notice of the process. It thus remains the case that uncertainty lingers as to "whether Eastern received notice of the bankruptcy court's orders, or their precursor proceedings, and whether the debtors or possibly Eastern itself bore responsibility for any failure of notice." (Memo. Op. and Ord. at 14).

D.  The Impact of the Decision of the Supreme Court of Appeals of West Virginia in <u>Naab v. Nolan</u>, 174 W. Va. 390, 327 S.E.2d 151 (1985)

Plaintiffs opposed Fountain Place's motion for summary judgment on the trespass claim found in Count Five based upon the decision in <u>Naab</u>. The court observed as follows:

> The [per curiam] decision in <u>Naab</u> addresses adverse possession and prescriptive easements. It does not involve attribution to a passive, succeeding land owner of the consequences of his predecessor's earlier active trespass. Nevertheless, <u>Naab</u> includes this isolated statement: "An elementary principle of property law states that the owner of a burdened premise is bound by the actions or inactions of his predecessors in title."

7

> Id. at 392, 327 S.E.2d at 153. The cited rule is
> unaccompanied by any citation of authority.

(Memo. Op. and Ord. at 13-14). The court ultimately concluded that the Naab decision was not a sufficient basis upon which to enter judgment as a matter of law in either party's favor.

Plaintiffs now rely upon section 161 of the Restatement (Second) of Torts, which provides as follows:

> 1) A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it.
>
> (2) A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor's predecessor in legal interest therein has tortiously placed there, if the actor, having acquired his legal interest in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing.

Restatement (Second) of Torts § 161 (1965). Plaintiffs' analysis accompanying this excerpt is as follows:

> If Monterra would have placed a piece of equipment over an access road preventing access to one of Plaintiffs' wells, this Court would not likely have any issue ordering that Fountain Place would be responsible to remove the same. The same should be true regarding the continued trespass with respect to the fill dirt over the DC-4 Pipeline. The nature of the trespass does not change the fact that Fountain Place, as successor to Monterra, is responsible to remedy the same. If the Court were to adopt Defendants' argument with respect to the effect of the bankruptcy court's order, then the potential effect of said ruling would have the absurd result of Plaintiffs never being able to have the trespass remedied, or in the context of the example

above, the equipment moved.

(Pls.' Supp. Br. at 5). No supporting authority is cited.

The court notes that section 161(2) speaks in terms of "a structure, chattel, or other thing." Id. It is unclear whether the drafters intended the section to reach the placement of fill dirt by the owner of the real property over top of an easement running through the property. That concern aside, plaintiffs offer no discussion concerning whether the supreme court of appeals would adopt the principles found in section 161. The court concludes that neither party is entitled at this time to judgment as a matter of law as to Count Five.

E.  Further Evidence Offered by Plaintiffs in Support of Their
    Request for Summary Judgment as to Count Three

In Quintain Development, LLC v. Columbia Natural Resources, Inc., 210 W. Va. 128, 556 S.E.2d 95 (2001), the supreme court of appeals concluded that one requesting relocation of a pipeline, in a manner upsetting the status quo, without any benefit to the pipeline owner, must pay the associated relocation costs. See also Equitable Gathering Equity, LLC v. Dynamic Energy, No. 5:07-cv-00725, 2009 WL 37186, at *7 (S.D. W. Va. Jan. 7, 2009) ("[T]he cost falls on the party that knew of the

9

existence of the pipelines, altered the status quo, and seeks to benefit from any relocation.") (emphasis added).

In seeking summary judgment as to Count Three, plaintiffs stated as follows:

> [R]elocation of the pipeline was further necessitated by Defendant's development of the subject property as admitted by Fountain Place Member and co-owner, Everett Hanna and evidenced by correspondence to David Jewell from Defendant's Project Manager. See Exh. I at pp. 21 and correspondence from Gary Corns dated November 26, 2001 attached to Plaintiffs' Motion as Exh. R.4 ("Thank you for your patience with us as we're attempting to finalize our necessary realignment of your gas transmission line at the Fountain Place Mall.").

(Pls.' Memo. in Supp. at 16 (emphasis added)). The court noted that if Fountain Place implicitly requested that the pipeline be relocated, plaintiffs might benefit from the shifted-liability principle espoused in <u>Quintain</u> and <u>Dynamic Energy</u>. Upon examining the portions of the record identified by plaintiffs at that time, however, the court obseved that it was "unable to conclude as a matter of law that Fountain Place actively or implicitly sought to disturb the status quo existing on the subject property." (Memo. Op. and Ord. at 18).

Plaintiffs have now offered additional evidence supporting their earlier request for summary judgment as to Count Three. They rely principally upon the affidavit of Timothy K.

Wilcox filed March 28, 2011.  Mr. Wilcox is president of Southern Public Service Company and professes a familiarity with the pipelines located on the subject property.  Mr. Wilcox states that in November 2001 he was involved in a proposed relocation of one of the lines owned by EPC.  He states that the move was to be made at the request of Fountain Place to accommodate future development.  He also asserts that he received a check in the amount of $10,000 from Fountain Place project manager Gary Corns for the relocation but the move never occurred.

Fountain Place maintains, with appropriate citation to the record, that it never sought relocation of the pipeline at issue in this action.  The court concludes that genuine issues of material fact remain.  Plaintiffs are not entitled to judgment as a matter of law respecting Count III.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: April 8, 2011

John T. Copenhaver, Jr.
United States District Judge