```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

EQT GATHERING EQUITY, LLC,
a Delaware limited liability company, and
EQT PRODUCTION COMPANY
a Pennsylvania corporation,

       Plaintiffs

v.                                       Civil Action No. 2:09-0069

FOUNTAIN PLACE, LLC,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On September 6, 2011, the court resolved the parties' motions for summary judgment. On September 9, 2011, counsel appeared for the pretrial conference. At that time the court noted the recent invocation of statute of limitations and laches defenses by defendant Fountain Place, LLC ("Fountain Place"). Counsel were given leave to brief the matter. The final submission on the issue was received October 14, 2011.

                                       I.

The court does not revisit the factual or legal discussions found in the memoranda opinions and orders previously entered. A familiarity with their contents is assumed and further detail is provided herein only as context warrants.

Fountain Place contends that it placed no fill dirt over the pipeline in question at any time after acquiring the subject property on February 8, 2001. It additionally asserts that its predecessor in title, Monterra Market Place, Inc., through a related entity, Monterra Development Corporation, ceased all construction activities on the subject property on or before January 19, 1999. It thus asserts that plaintiffs' claims in this action, which were not instituted until January 26, 2009, are barred by the applicable statute of limitations.

Plaintiffs assert that the limitations period has not expired. They contend that the torts in question, which are claims for negligence and trespass, are of a continuing nature and the limitations period has not accrued. (See Resp. Br. at 3 ("Fountain Place had a duty to remove/remedy the trespass and interference with EQT's pipeline and related easement. Fountain Place's continued breach of this duty (failure to remove the trespass and interference with the pipeline and easement) is 'a continuing breach of duty causing a continuing or repeated injury [and] the statute of limitations does not begin to run until the date of the last injury.'") (quoting Graham v. Beverage, 211 W. Va. 466, 476, 566 S.E.2d 603, 613 (2002)).

On September 23, 2011, the court directed counsel to meet and confer in an attempt to reach a stipulation respecting (1) the last date by which Monterra Market Place, Inc., or Monterra Development Corporation might have placed fill material on the pipeline, and (b) the last date by which Fountain Place might have done likewise. The parties were unable to reach agreement. Their respective positions appear below:

| Party | Last Fill Date by Monterras | Last Fill Date by Fountain Place |
|---|---|---|
| Plaintiffs | February 8, 2001 | May 25, 2007[1] |
| Fountain Place | January 19, 1999 | No Fill Placed |

Having reviewed the record, the court concludes that the accrual date is fact bound. This precludes judgment as a

---

[1]This date is expressed with some uncertainty. Plaintiffs explanation concerning it is as follows:

> EQT believes that Fountain Place put some fill material over the subject pipeline between February 8, 2001 and November 26, 2005. EQT further believes that Fountain Place put additional fill material over the subject pipeline after November 26, 2005. EQT bases its belief in this regard on the testimony of David Jewell. Although EQT cannot offer any definitive last date that Fountain Place, or someone acting on its behalf, might have place[d] fill material over the subject pipeline, EQT believes that it might have been on or before May 25, 2007. However, because the pipeline was not relocated until January, 2008, EQT cannot say for certain whether any additional fill material was placed over the subject pipeline by Fountain Place, or someone acting on its behalf, up until the date of relocation.

(Jt. Stip. at 2).

matter of law on the limitations defense. The matter may be presented to the jury with appropriate proposed instructions and interrogatories.

The parties briefing raises one subsidiary legal issue, however, that is capable of resolution now. It is plaintiffs' contention that the limitations period has either not accrued at all or did not accrue until 2008 when the pipeline was relocated. The view is based upon plaintiffs' theory that the failure to remove the trespass, presumably thousands of cubic yards of fill material, constitutes a continuing tort within the exception to the usual limitation accrual rules.

## II.

The applicable limitation provision for tortious damage to property is West Virginia Code § 55-2-12(a). Syl. pt. 1, Family Savings and Loan, Inc. v. Ciccarello, 157 W. Va. 983, 207 S.E.2d 157 (1974); State ex rel. Ashworth v. Road Comm'n, 147 W. Va. 430, 128 S.E.2d 471 (1962); Powderidge Unit Owners Ass'n v. Highland, 196 W. Va. 692, 704, 474 S.E.2d 872, 884 (1996). The statute prescribes a two-year period within which to institute an action after accrual of the right to bring it. W. Va. Code § 55-

2-12(a). It is generally the case that a tort claim accrues when the injury occurs.

But exceptions to the rule abound. See Graham v. Beverage, 211 W. Va. 466, 476, 566 S.E.2d 603, 613 (2002) (stating, "[T]here are numerous exceptions to this general rule."). One settled exception is for those torts of a continuing nature. This carve out, however, is often misconstrued by injured parties as applying more broadly than intended. The nature of the exception is illustrated by comparing two West Virginia cases.

The first is Handley v. Town of Shinnston, 169 W. Va. 617, 289 S.E.2d 201 (1982). In Handley, the plaintiffs' home was damaged by a leaking water line. The Town of Shinnston had installed the line on the property prior to plaintiffs' purchase. Plaintiffs noticed the leak in 1972 and alerted the town. The leak continued till 1976, when the line broke and caused a breach in plaintiffs' yard. Plaintiffs complained to the town again. The town repaired the breach but the line continued leaking until its removal in 1978. The breach expanded and slipped thereafter, which caused a large hole to develop in plaintiffs' yard. The foundation shifted as well.

In 1979, plaintiffs instituted an action against the town arising from the damage to their yard. The circuit court dismissed the action on limitations grounds. The Supreme Court of Appeals of West Virginia reversed, observing as follows:

> In this case it is clear that the damage did not occur all at once but increased as time progressed; each injury being a new wrong. "[W]here a tort involves <u>a continuing or repeated injury</u>, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease."
>
> Donald Handley's deposition indicates that the damage to the property continued even after the suit was filed. If the tortious act in this case did indeed cease, it was not until 1978, when the leaking waterline was removed from the appellants' property.

<u>Handley</u>, 169 W. Va. at 619, 289 S.E.2d at 202 (emphasis added) (citations omitted).

In contrast to the circumstances in <u>Handley</u> are those in <u>Hall's Park Motel, Inc. v. Rover Construction, Inc.</u>, 194 W. Va. 309, 460 S.E.2d 444 (1995). In 1981, certain private and public entities excavated a pit to serve as a sewage lift station. The pit was next to an adjoining parcel, on which sat Hall's Park Motel. The motel was damaged in 1981 when land near and beneath it started to slip and subside. Still in 1981, the motel owners filed an informal, $40,000 claim for damages which was turned over to the alleged tortfeasors' insurer. No further action was taken by the motel's owners until 1991, when they

instituted a civil action.  The circuit court dismissed the case as time barred.

The motel's owners appealed, asserting that the property damage was continuing in nature and within the applicable limitations period.  The supreme court of appeals affirmed the dismissal, stating as follows:

> In the present case, it is clear that Hall's Park Motel, Inc., is complaining about <u>the discrete and completed act</u> of . . . [one of the tortfeasors] in constructing the lift station in question.  The complaint says: "As a direct and approximate [sic] result of the negligent, careless and reckless construction by the defendants, the plaintiff's motel and real property was severely damaged . . . . " A fair reading of the complaint and the other documents in the case shows that the action, in essence, <u>is founded on a discrete and completed act of negligent commission, not on a continuing negligent act of omission, as was the case in the Town of Shinnston case</u>.

<u>Hall's Park</u>, 194 W.Va. at 313, 460 S.E.2d at 314 (emphasis added).

To the extent that the differences between the cases are not evident, the decision in <u>Ricottilli v. Summersville Memorial Hospital</u>, 188 W.Va. 674, 425 S.E.2d 629 (1992), distills the matter to its essence:

> [T]he concept of a continuing tort requires a showing of repetitious, wrongful conduct.  Moreover, as this Court explained . . . , a wrongful act with consequential continuing damages is not a continuing tort.

<u>Ricottilli</u>, 188 W. Va. at 677, 425 S.E.2d at 632.

With respect to plaintiffs' negligence claim, the breach of duty, if any, by either Fountain Place or its predecessor in title occurred at the time the fill was placed. No further duty or injury arose following that date. The breach occurred, and the injury was complete, when the filling ceased. It was at that time that the wrongful act occurred and plaintiffs were charged with pursuing their rights within two years thereafter. This view is supported by West Virginia negligence law. See Roberts v. West Virginia American Water Co., 221 W. Va. 373, 378, 655 S.E.2d 119, 124 (2007) ("Appellant is claiming damages for the single, discrete act of constructing and installing the waterline and not for any continuing malfunction of the installation or further misconduct of Appellees. Thus the last tortuous act or omission alleged by Appellant to have been committed by any Appellee was in 1999 when the waterline installation was completed."). The same is true respecting the trespass claim. See, e.g., Miller v. Lambert, 196 W. Va. 24, 30, 467 S.E.2d 165, 171 (1995)(dealing with separate continuing trespasses in different years and noting, "We have stated that the continuing tort theory is inapposite where the plaintiff claims fixed acts by the defendant which do not involve a continuing wrong. In the present case, the trespass occurred first in 1983 and subsequently in 1986. Even where a tort

8

involves a continuing or repeated injury, the cause of action accrues at the date of the last injury.").

Based upon the foregoing discussion, the court concludes that plaintiffs' may not rely upon the continuing tort exception.  The usual date-of-injury accrual rule will apply for purposes of calculating whether plaintiffs' claims were filed within the applicable two-year period.[2]

### III.

Based upon the foregoing, it is ORDERED that plaintiffs be, and they hereby are, precluded from relying upon the continuing tort exception.

---

[2]The court does not at this time address the laches defense. The supreme court of appeals has observed that "laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." Grose v. Grose, 222 W. Va. 722, 728, 671 S.E.2d 727, 733 (2008)(internal quotation marks and citations omitted).  The proponent of the defense must demonstrate a "lack of diligence by the party causing the delay and prejudice to the party asserting it." Id.  The matter is better determined following development of the entire evidentiary record at trial.  It may be that the court will consider application of the equitable defense, if necessary, after receiving the jury's verdict.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

ENTER: November 9, 2011

John T. Copenhaver, Jr.
United States District Judge